Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 07 2013, 5:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID M. ZENT**
Deputy Public Defender
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DOMINIQUE L. WHITE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A05-1212-CR-651 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D06-1206-FD-885

**August 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Dominique L. White ("White") pleaded guilty to four counts of neglect of a dependent,[1] each as a Class D felony, one count of operating a vehicle while intoxicated[2] as a Class D felony, and one count of driving while suspended[3] as a Class A misdemeanor, and received an aggregate sentence of 4 years. She now appeals, contending her sentence was inappropriate in light of the nature of the offense and her character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

At approximately 4:30 a.m. on June 24, 2012, Detective Roddy, of the Fort Wayne Police Department, was driving behind White's vehicle. After Detective Roddy witnessed White's vehicle strike a curb twice, weave, and nearly run a red light, he contacted Officer Troyer to conduct a traffic stop. When Officer Troyer made the stop, he witnessed "a young girl in the front seat . . . turned around facing [the officer] and leaning into the back seat, it was obvious that she was not properly restrained." *Appellant's App.* at 18. Officer Troyer approached White's vehicle and recognized that the young girl was placing an infant into a car seat.

While Officer Troyer spoke with White, he noticed the odor of alcohol emanating from the vehicle. White also responded slowly to Officer Troyer's questions, with slurred speech. When Officer Troyer learned that White had three active warrants, he

[1] *See* Ind. Code § 35-46-1-4(a)(1).

[2] *See* Ind. Code § 9-30-5-3(a)(1).

[3] *See* Ind. Code § 9-24-19-2.

2

took White into custody. Two other young children were in the backseat of White's car. Only one of the children was secured in a child safety seat.

Officer Troyer searched the Indiana Bureau of Motor Vehicle's records and discovered that White's driving privileges had been suspended. White subsequently underwent a certified breath test that determined her blood alcohol content to be 0.10 percent. After a sergeant informed White of her *Miranda* rights, White told the sergeant that she takes three Xanax a day and that she had taken two Ambien prior to driving with her children in the car.

The State charged White with four counts of neglect of a dependent, each as a Class D felony, one count of driving while intoxicated as a Class D felony, and one count of driving while suspended as a Class A misdemeanor. White pleaded guilty to all six charges in exchange for placement in the drug court diversion program. Pursuant to the agreement, if White successfully completed drug court, then the State agreed that it would dismiss all counts against her in exchange for White pleading guilty to one count of Class B misdemeanor reckless driving.

During White's three months in drug court, she missed three drug screens and submitted two positive drug screens. She also failed to complete community service and did not maintain the appropriate contact with law enforcement. The court ordered substance abuse treatment for White, but White failed to attend the initial session on two occasions.

After White's violations of the program terms, White withdrew from the program and proceeded to sentencing. At the sentencing hearing, she stated that she committed

the offenses because she "was just placed in a situation where [she] had to leave where [she] was at," and she "was just placed in a bad situation." *Sent. Tr.* at 10-11. The trial court found White's guilty plea and acceptance of responsibility as mitigating circumstances, but it rejected the potential hardship of incarceration on dependents as a mitigating factor. As aggravating circumstances, the trial court discussed White's criminal history and failed attempts at rehabilitation. The trial court noted that White had "been given the opportunities at treatment, jail, probation, community service, home detention, the Department of Correction, parole and Drug Court and [she] continued [her] criminal behavior." *Id.* at 15. Consequently, the trial court sentenced White to the Indiana Department of Correction for two years on each of Counts I-V and one year on Count VI. Count I was ordered consecutive to Count II, with all other counts ordered concurrent, for a total aggregate sentence of four years executed, the maximum sentence. White now appeals.

## DISCUSSION AND DECISION

White argues that her aggregate sentence of four years was inappropriate in light of the nature of the offense and her character. She maintains that because she is not the worst offender nor did she commit the worst offense, she should not have been sentenced to the maximum sentence that could have been imposed. White raises this same argument in her other appeal that is currently before this court, Cause No. 49AO2-1211-CR-949.

We may revise a sentence after careful review of the trial court's decision if we conclude that the sentence is inappropriate based on the nature of the offense and the

4

character of the offender. Ind. Appellate Rule 7(B). "Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate." *McMahon v. State*, 856 N.E.2d 743, 749 (Ind. Ct. App. 2006) (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)). Even if the trial court followed the appropriate procedure in arriving at its sentence, the appellate court still maintains a constitutional power to revise a sentence it finds inappropriate. *Hope v. State*, 834 N.E.2d 713, 718 (Ind. Ct. App. 2005). Nevertheless, the reviewing court "must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). Further, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts . . . but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

White argues that her aggregate sentence of four years was inappropriate in light of the nature of the offense and her character. She maintains that although her criminal record consists of one juvenile delinquency adjudication, thirteen misdemeanor convictions, and two felony convictions, her prior offenses were mainly for traffic violations and conversion/theft cases. She notes that she pleaded guilty just one month after her initial hearing, saving the State and the court the time and expense of preparing for and proceeding to trial. Furthermore, she points to a letter she gave to the judge at sentencing, which referenced her recent baptism, asked for help with her alcohol

addictions, requested supervision, and indicated that she wished to speak to others about what she has been through, so she might help them. White also notes that although her children were at risk of injury, no one was injured by her behavior. Finally, White urges that because she did not commit the worst offense nor is she the worst offender, she should not have been given the maximum sentence.

Maximum sentences are generally most appropriate for the worst offenders. *Buchanan v. State*, 767 N.E.2d 967, 973 (Ind. 2002). This maxim is not, however, a guideline to determine whether a worse offender could be imagined. *Id.* Rather, "we refer generally to the *class* of offenses and offenders that warrant the maximum punishment." *Id.* Such a class encompasses a considerable variety of offenses and offenders. *Id.* When reviewing a maximum sentence, we concentrate less on comparing the facts of this case to others, whether real or hypothetical, and focus more on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character. *Hull v. State*, 839 N.E.2d 1250, 1257 (Ind. Ct. App. 2005) (citing *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2007), *trans. denied*).

Here, White was driving at 4:30 a.m. with a blood alcohol content of 0.10 percent and after having consumed two Ambien. Three of her children, aged five months old, two years old, and five years old, sat in the backseat of the car. Only the two-year-old child was secure in a child safety seat as White weaved, struck two curbs, and almost ran a red light. Meanwhile, White's eleven-year-old daughter, unrestrained in the front-passenger seat, was turned around, attempting to secure her five-month-old sibling into a

6

safety seat. It is fortunate that no one was hurt.

As to her character, White, who was twenty-seven years old at the time of this offense, already had thirteen misdemeanor convictions and two felony convictions, many of which are similar in nature to the immediate offenses, including prior convictions for driving while suspended and reckless driving. Two convictions for battery demonstrate a violent character. Furthermore, at the time White committed the immediate offenses, she was facing charges in three other causes, two of which were for operating while intoxicated and one of which was for driving while suspended. In one of her operating while intoxicated cases, she failed to appear, leading the court to issue a warrant.

White has not shown a willingness or desire to change. The trial court succinctly summarized the opportunities different courts had extended to White: "treatment, jail, probation, community service, home detention, the Department of Correction, parole and Drug Court and [she] continued [her] criminal behavior." *Sent. Tr.* at 15. Indeed, White violated her probation in her first adult offense in January of 2003, twice in 2004, and again in 2006. In 2008, her placement in home detention was revoked, and she served two years in the Department of Correction.

In this proceeding, White had the opportunity to rehabilitate through drug court, yet she missed three drug screens and submitted two positive drug screens. White also failed to complete community service and did not maintain the appropriate contact with law enforcement. The court ordered substance abuse treatment for White, but she failed to attend the initial session on two occasions. Although White gave the judge a letter at sentencing that described her desire to change, at the hearing, she did not accept

responsibility for her actions when she stated, twice, that she "was just placed in a bad situation." *Id.* at 10-11.

White has failed to demonstrate that the trial court's sentence was inappropriate.

Affirmed.

VAIDIK, J., and PYLE, J., concur.